**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

MATTHEW KLEIN, and THE
HEALTH SPECTRUM, LLC

       Plaintiffs,                      Case No:

v.

DIAN OVED, and OVED MEDIA INTERNATIONAL
INC. d/b/a EMPOWER DIGITAL

       Defendants.
_____/

**COMPLAINT**

Plaintiffs Matthew Klein a/k/a Sifu Matthew and The Health Spectrum, LLC ("Spectrum") sue the Defendants Dian Oved and Oved Media International Inc. d/b/a Empower Digital ("Empower") and state:

**JURISDICTION**

1. Klein is a resident of Palm Beach County, Florida.

2. Spectrum is a Delaware limited liability company.

3. Oved is a resident of Arizona.

4. Empower is an Arizona corporation.

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the Plaintiffs assert claims against Defendants pursuant to 18 U.S.C. § 1836(b)(1), (c), 18 U.S.C. §§ 1030, *et seq.* and 18 U.S.C. §§ 2701, et seq, and supplemental jurisdiction exists over the remaining claim.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial portion of the events surrounding this case occurred in this District as Defendants engaged in tortious conduct that was directed into this District.

1

## BACKGROUND FACTS

7. At all times relevant, Klein has owned and operated Spectrum, which provides wellness services, life coaching, martial arts training, and career advising to clients.

8. Klein provides services across state lines, to clients across the country, utilizing wires and communications that cross state lines.

9. Klein and Oved dated from January 2017 to December 2019.

10. During the relationship, Oved would engage in irrational and disturbing behavior, such as, threatening to kill herself if Klein broke up with her, calling and texting Klein at all hours when he was traveling for work, and banging on Klein's door throughout the night.

11. Oved told Klein that she felt that a "dark force was possessing her that wanted his energy all the time," and she admitted that she blamed Klein for "all of her darkness."

12. In December 2019, after Klein and Oved broke up, Klein hired a third party to collect from Oved Klein's personal items that remained in Los Angeles, California, which is where he lived prior to moving to Florida.

13. To Klein's understanding, Klein's belongings were located in three locations: Klein's former residence, and two separate storage sites, one of which was located on-site at Oved's and Klein's former apartment complex where his residence was located.

14. Oved notified the third party she had placed all of Klein's belongings, other than Klein's old furniture, in Klein's former office. The third party thereafter removed all of Klein's belongings from the office. Klein had agreed to give his old furniture to Oved.

15. After visiting the two storage sites, one of which was inaccessible due to furniture shifting and the other which held only furniture, the third party asked Oved on two separate

occasions if there were any other belongings of Klein that she needed to deal with. Oved stated "No."

16.     After Klein broke up with her, Oved demonstrated her intent to harm him and Spectrum financially, telling Klein's business associates she had sensitive information about Klein and she could "ruin" him and Spectrum.

17.     Oved is a publicist and social media marketer, which she has referenced in making threats against Klein and Spectrum.

18.     In December 2019, Oved and Empower sued Klein and Spectrum in Florida circuit court in Miami-Dade County, seeking repayment of an alleged loan (the "Litigation").

19.     In December 2021, during the course of the Litigation, Klein sought the assistance of Alexander Feil, a retired military intelligence officer with 17 years' experience in intelligence and security. Klein requested that Mr. Feil assist him in recovering electronic communications.

20.     On December 16, 2021, Plaintiffs learned that Oved had in her possession an iPad identified as "Matthew's iPad" at her residence in Phoenix, Arizona.

21.     Oved did not have permission to have the iPad, as Oved and Klein had agreed that he was entitled to the return of all his belongings other than furniture after he and Oved broke up. Furthermore, Klein had turned off the mobile service provider on the iPad after the break-up, believing that the device was stored safely away.

22.     Upon being retained, Mr. Feil determined that the iPad was active and located in Phoenix by using Apple's "Find My" application, which allows users to determine the location of devices.

23.     After Klein learned that Oved was in possession of his iPad, he sent a text message via iMessage (Apple to Apple text service) expressing his shock that Oved may have access to his

private texts and files. Text messages sent on iMessage would have synced to and been visible on any of Klein's Apple devices.

24. The iPad was then disconnected and has subsequently remained offline.

25. According to Mr. Feil, based on Klein's device and iCloud settings, Oved, at minimum, was likely able to actively monitor Klein's iMessage, desktop, downloads, documents, and photos, as well as to track the real-time location of Klein's devices, including his iPhone.

26. Klein used iMessage on his iPhone to communicate privately with his counsel in the Litigation.

27. On December 30, 2021, Mr. Feil reviewed Klein's online accounts (banking, administrative, social media) in order to identify anomalous and unrecognized logins/devices.

28. Klein and Spectrum use the Evernote application, a digital notebook utilizing cloud storage for cross-access from devices.

29. Klein and Spectrum use the Evernote platform to store confidential information and trade secrets, personal notes, business IP and strategy, financial information, and usernames and passwords. Klein utilizes Evernote to collaborate with consultants who assist him in developing trade secrets.

30. The trade secrets stored on the Evernote platform consist of the following:

    a. Proprietary descriptions and techniques utilized for martial arts wellness, corporate wellness, injury recovery, fitness and overall wellbeing, and various business applications of such techniques.

    b. Marketing plans and identities of potential customers.

    c. Confidential VIP client lists, along with descriptions of their personal and business issues.

        d. Financial records, including income and revenue from specific clients, and financial projections and goals.

31. The foregoing documents and information are hereafter referred to as the "Trade Secrets."

32. Klein and Spectrum also use Evernote to maintain backup records of their consultations with clients. Klein and Spectrum advise clients regarding business strategies and their clients share with Klein and Spectrum their trade secrets in connection with the same. Such trade secrets consist generally of business strategies and information like confidential formulae used in connection with businesses. The foregoing documents are highly sensitive and confidential.

33. Klein and Spectrum also used the Evernote platform to document and memorialize his litigation strategy in the Litigation.

34. Klein further used the Evernote system to maintain a personal diary.

35. Login data obtained from Evernote indicated that the IP address 76.216.128.26 (a non-VPN IP address), located in Phoenix logged into the Evernote platform via the Evernote web application twelve times from October 7, 2021, to November 8, 2021.

36. A second IP address (70.167.208.135), located in Phoenix successfully logged into Klein's Evernote account on November 5, 2021.

37. Mr. Feil logged into Klein's personal email account (thehealthspectrum@gmail.com) ("Klein's Gmail") in order to determine if there was unauthorized access to that account. Five devices were logged into the Gmail account, one of which was listed as a "Mac" from Arizona, USA, as having logged in on December 22, 2021.

38. Further analysis by Mr. Feil indicated that the device's IP address logged into Klein's Gmail was 76.216.128.26 the same IP address logged into Klein's Evernote account from Phoenix.

39. Klein also used his Gmail account to privately communicate with his counsel in the Litigation.

40. Mr. Feil also determined that a device utilizing a Phoenix IP address had logged into Mr. Klein's Instagram account in July 2021.

41. Klein's counsel in the Litigation informed Oved's counsel that Oved had accessed Klein's confidential information using his iPad.

42. Klein's counsel requested the return of the iPad.

43. As of the date of this Complaint, Oved's counsel never denied that Oved had accessed Klein's confidential information or accounts, and neither Klein nor his attorney have been given Klein's iPad.

44. At all times relevant, Oved acted on Empower's behalf and in concert with it.

## COUNT I: VIOLATION OF STORED COMMUNICATIONS ACT

45. Plaintiffs hereby sues all Defendants for their violations of the Stored Communications Act, 18 U.S.C. §2511, et seq. (the "SCA"), and reallege paragraphs 1 – 44.

46. By accessing the information and data stored on Klein's iPad (including the iMessage system), and by accessing Plaintiffs' Evernote, Gmail, and Instagram accounts, Oved intentionally accessed, or caused others to access, and continue to access, without authorization a facility through which its electronic communications services are provided.

47. Oved exceeded her authorization, which was none, to access Plaintiffs' stored communications and obtained access to wires and electronic communications while in electronic storage.

48. Oved's actions caused irreparable harm.

49. Plaintiffs lack an adequate remedy at law.

50. Unless enjoined by this Court, Oved's and Empower's violations of the SCA will continue and Plaintiffs will continue to suffer imminent and irreparable harm.

51. Klein and Spectrum seek an injunction against further violations of the SCA, and to enjoin the use or disclosure of any information obtained by Defendants in violation of the SCA.

52. Pursuant to 18 U.S.C. §2707, a plaintiff is entitled to equitable relief.

53. 18 U.S.C. §2707(b)(3) provides for the award of reasonable attorney's fees and costs.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in favor of Plaintiffs and award injunctive relief, the costs incurred in this matter, attorney's fees, and any further relief this court deems just.

## COUNT II: TRADE SECRET MISAPPROPRIATION CLAIM

54. Plaintiffs hereby sues all Defendants for their violations of the Defend Trade Secrets Act, 18 U.S.C. §1836, et seq. (the "DTSA"), and reallege paragraphs 1 – 44.

55. Spectrum and Klein own the Trade Secrets, which are identified in paragraph 30 of this Complaint.

56. The Trade Secrets are related to Klein's and Spectrum's products and services that are used in interstate and foreign commerce.

57. Oved and Empower acquired access to the Trade Secrets through misappropriation in that Oved acquired the Trade Secrets by improper means.

58. Oved utilized improper means by accessing the Trade Secrets on Klein and Spectrum's Evernote account without authorization, which was electronic espionage.

59. Klein and Spectrum undertook reasonable methods to maintain the secrecy of the Trade Secrets by storing the trade secret information in a locked, password-protected computer system.

60. The Trade Secrets are of substantial economic value and have conferred a competitive advantage on Klein and Spectrum.

61. Klein and Spectrum has been damaged as a result of the foregoing conduct.

62. All of the acts of trade secret misappropriation occurred on or after the date of the enactment of the Defend Trade Secrets Act, May 11, 2016.

63. Oved's and Empower's misappropriation of the Trade Secrets was willful and malicious. Oved and Empower knew Oved was not authorized to access Klein's and Spectrum's Evernote account. Accordingly, Plaintiffs are entitled to attorney's fees pursuant to 18 U.S.C. § 1836 (b) (3)(D).

64. As a direct and proximate result of the foregoing misappropriation of the Trade Secrets, Klein and Spectrum will suffer imminent and irreparable harm.

65. Unless enjoined by this Court, Oved's and Empower's acts of misappropriation will continue and Plaintiffs will continue to suffer irreparable harm.

66. Klein and Spectrum seek to enjoin Oved and Empower from using the Trade Secrets in any fashion.

67. Klein and Spectrum have no adequate remedy at law and are entitled to an injunction under 18 U.S.C. § 1836(b)(3)(A).

WHEREFORE, Plaintiffs respectfully request this court enter judgment in favor of Plaintiffs and award injunctive relief, attorney's fees, the costs incurred in this matter, and any further relief this court deems just.

## COUNT III – VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030

68. Plaintiffs hereby sues all Defendants for their violations of the Computer Fraud and Abuse Act, 18 U.S.C. §1030, et seq. (the "CFAA"), and reallege paragraphs 1 – 44.

69. Oved and Empower, unlawfully and without authorization, obtained or attempted to access or obtain information from a computer used or affecting interstate or foreign commerce or communication.

70. Klein and Spectrum sustained at least $5,000 in damages, consisting of fees paid to investigate and remedy Oved's conduct, and time incurred by Plaintiffs to respond to and remedy Oved's conduct.

71. Plaintiffs lack an adequate remedy at law.

72. Unless enjoined by this Court, Oved's and Empower's violations of the CFAA will continue and Plaintiffs will continue to suffer imminent and irreparable harm.

73. Klein and Spectrum seek an injunction against further violations of the CFAA, and to enjoin the use or disclosure of any information obtained by Defendants in violation of the CFAA.

WHEREFORE, Plaintiffs respectfully request this court enter judgment in favor of Plaintiffs and award injunctive relief, the costs incurred in this matter, attorney's fees, and any further relief this Court deems just.

## COUNT IV - REPLEVIN

74. Plaintiffs reallege 1 through 44.

75. This is an action to recover possession of personal property in Arizona.

76. The description of the property is: an iPad identified as "Matthew's iPad." To the best of Plaintiffs' knowledge, information, and belief, the value of the property is $100.

77. Plaintiffs are entitled to the possession of the property because it is the personal property of Plaintiffs.

78. To Plaintiffs' best knowledge, information, and belief, the property is in the possession of Oved or her agent.

79. The property is wrongfully detained by Defendants. Defendants came into possession of the property because Defendants did not return possession of it to Plaintiffs after Klein and Oved ended their relationship.

80. To Plaintiffs' best knowledge, information, and belief, Defendants continue to detain the property

81. The property has not been taken for any tax, assessment, or fine pursuant to law.

82. The property has not been taken under an execution or attachment against Plaintiffs' property

WHEREFORE Plaintiffs demand judgment for possession of the property identified as Matthew's iPad.

                                            BARNETT, KIRKWOOD, KOCHE,
                                            LONG & FOSTER

                                            /s/ Stephen J. Bagge
                                            Todd Foster
                                            Florida Bar No. 325198
                                            Primary Email:  tfoster@barnettbolt.com

                        Stephen J. Bagge, Esq.
Florida Bar No. 97788
Primary Email:  sbagge@barnettbolt.com
601 Bayshore Boulevard
Suite 700
Tampa, Florida 33606
Telephone: (813) 253-2020
Facsimile:  (813) 251-6711
Secondary Emails:
 aott@barnettbolt.com
 litigation@barnettbolt.com
*Attorneys for Plaintiffs*