## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

MATTHEW KLEIN, and THE
HEALTH SPECTRUM, LLC

                Plaintiffs,                            Case No: 9:22-cv-80160-KAM

v.

DIAN OVED, and OVED MEDIA INTERNATIONAL
INC. d/b/a EMPOWER DIGITAL
                Defendants.

_____/

## PLAINTIFFS' EXPEDITED MOTION FOR PROTECTIVE ORDER

Plaintiffs Matthew Klein a/k/a Sifu Matthew and The Health Spectrum, LLC ("Spectrum") move the Court for an expedited entry of a protective order pursuant to Rule 26 and the court's inherent authority. Plaintiffs seek an order precluding Defendants from engaging in communications with actual or prospective clients of Plaintiffs regarding this litigation, from issuing subpoenas against actual or prospective clients, or from deposing actual or prospective clients and state as follows:

### INTRODUCTION

This case arises from Defendants' hacking into Plaintiffs' electronic accounts, from Defendants' extortion and abuse of process, and from the Defendants' repeated attempts to harm Plaintiffs' business relationships.

Defendants previously threatened to issue subpoenas on "all" of Plaintiffs' clients. Plaintiffs have now learned that Defendants have issued evidence preservation letters to various clients of Plaintiffs. Defendants, explicitly invoking this lawsuit, claim in the preservation letters that the clients attended or were invited to attend a retreat, event or class at a South Florida wellness resort (the "resort"). Plaintiffs had alleged in the Amended Complaint that Defendants

tortiously interfered with Plaintiffs' relationship with the resort. Defendants have requested that Plaintiffs' clients preserve a wide range of documents ostensibly relevant to the resort tortious interference claim.

None of the clients have any knowledge regarding Defendants' interference with Plaintiffs' relationship with the resort and the documents requested to be preserved are irrelevant. Nevertheless, in order to protect their clients from being entangled in this lawsuit and to prevent further harassment by Defendants, Plaintiffs filed a notice of partial dismissal of their claims premised on interference with their relationship with the resort. Plaintiffs requested that Defendants agree to not issue discovery on Plaintiffs' clients. Defendants refused, as they asserted that the notice of dismissal was invalid on technical grounds.[1] They further stated an intent to continue to "investigate" Plaintiffs' claims that Plaintiffs had sought to voluntarily dismiss.

Plaintiffs have since filed a notice of limited non-opposition to Defendants' previously asserted motion to dismiss, in a further effort to moot in this litigation any claim relating to the resort. Given the notice of limited non-opposition which mooted any need to conduct discovery relating to the resort, Plaintiffs requested that Defendants cease contacting Plaintiffs' clients regarding this case or otherwise seeking to serve discovery on them. Defendants have refused, claiming since they haven't served any formal discovery yet, no protective order is warranted.

A protective order is needed because Defendants' supposed desire to conduct an investigation regarding the resort claim is just a pretext. The clients have either a highly attenuated or completely non-existent relationship with the resort and should not be targeted with either formal or informal discovery. Further, whatever relevance the clients may have had with

---

[1] Having researched the matter, Plaintiffs now concede that Rule 41 does not authorize a partial dismissal of a claim in a lawsuit.

the resort claim (which was none to begin with) is now moot given Plaintiffs' notice of limited non-opposition.

Defendants' desire to "investigate" now-mooted claims out of a vendetta against Plaintiffs. Defendants' scheming and harassing tactics are a continuation of prior litigation misconduct. Defendants have repeatedly sought to harm Plaintiffs' client relationships. They previously threatened to "ruin" Plaintiffs in a communication to one of the clients whom they have contacted again here. They have previously threatened to subpoena "all" of Plaintiffs' clients. They have threatened, in writing, to attack Plaintiffs' reputations if their litigation settlement demands were not met. They have wrongfully smeared Plaintiffs in this court and others and sought to disparage Plaintiffs by raising irrelevant issues, all in an effort to deter Plaintiffs from exercising their rights to vindicate and protect themselves through the court system.

While Defendant Oved has been enjoined from cyberstalking Plaintiff Klein by Palm Beach County Judge Parnofiello, she and her company, the Co-Defendant, now seek to use this court as an alternative means to pester Plaintiffs by damaging their client relationships. Simply put, it is apparent that Defendants desire to continue to harass Plaintiffs and their clients by whatever means possible. Given Defendants' prior conduct and threats, and the utter irrelevance of the recipients of the preservation letter to this case, a protective order is necessary to protect Plaintiffs and their clients from Defendants' conduct.

## FACTUAL BACKGROUND

Plaintiffs operate a business which provides wellness services, life coaching, martial arts training, and career advising to clients.[2] At times, Plaintiffs have offered such services in

---

[2] Matthew Klein Affidavit, attached as Exhibit A, ¶ 2.

conjunction with a resort.[3] At the resort, Plaintiffs were essentially tenants, using space at the

resort to conduct private retreats, classes and provide services to their most significant clients.[4]

Plaintiffs' clients and their corporations share sensitive and confidential information (including

private health and business information) about themselves and their families with Plaintiffs in

connection with Plaintiffs' life coaching, wellness consulting and business consulting services.[5]

Here, Plaintiffs have alleged that Defendants tortiously interfered with Plaintiffs'

relationship with the resort. As alleged in the Amended Complaint, Defendants engaged in a

blackmail and extortion scheme against Plaintiffs in connection with the resort. [D.E. 19 at 9]

They threatened in writing to ruin Plaintiffs' reputation utilizing her media contacts and social

media skills unless Plaintiffs paid a settlement demand of Defendants in connection with a

lawsuit Defendants had filed.[6] After Plaintiffs refused to pay the settlement demand, the resort

was immediately contacted by an individual asking questions regarding the allegations of

Defendants. [D.E. 19 at 9]

Plaintiffs believe that the person seeking contacting the South Florida wellness resort was

requested to do so by Defendants in furtherance of their extortion and blackmail scheme. [D.E. 19 at

9] Indeed, Defendants had specifically threatened to use their "media contacts" to "advertise" their

experiences with Plaintiffs.[7]

Additionally, Defendant Oved had expressed her intent to attack the reputation of Plaintiff

Klein. She has asserted to Klein's clients, including Michael Adler, that she had sensitive information

about Klein such that she would "ruin" him.[8] Thus, the contact of the resort by the individual was

---

[3] *Id.* ¶ 3.
[4] *Id.* ¶ 4
[5] *Id.* ¶ 5.
[6] Correspondence from prior counsel for Defendants, attached as Composite Exhibit B.
[7] *See* Composite Exhibit B.
[8] *See* Affidavit of Michael Adler, Exhibit C.

4

consistent with Oved's prior express threats and conduct and would have been in furtherance of

Defendants' efforts to obtain a monetary settlement from Plaintiffs.

Earlier in this case, Defendants had threatened to subpoena all of Plaintiffs' clients.[9]

While Defendants have not yet issued formal discovery, they have begun conducting informal

discovery on Plaintiffs' clients. As of the date of this motion, Defendants, through their counsel

here, have issued evidence preservation letters to at least nine of Plaintiffs' clients of which

Plaintiffs are aware.[10] One of the letters was also sent to the husband of one of Plaintiffs' clients

who is also a business associate of Plaintiffs.[11] The letters are essentially identical, and a

representative example is attached as Exhibit E.[12]

In pertinent part, the letters stated as follows:

> Upon information and belief, you have attended or been invited to attend, or have attended, a retreat, event or class put on by Klein and The Health Spectrum, LLC at the [South Florida wellness resort] and may have documentary or testimonial evidence relevant to this lawsuit….
>
> You are therefore placed on notice not to delete or allow the deletion of any of the following:
>
> - Any and all Documents relating to your stay at the [South Florida wellness resort] from January 1, 2018 through the present date;
> - Any and all Documents relating to your travel to the [South Florida wellness resort] from January 1, 2018 through the present date;
> - Any and all Documents relating to your relationship with Klein and/or The Health Spectrum, LLC from January 1, 2018 through the present date; and
> - Any and all Documents relating to a retreat, class or event you attended which was put on by Klein and/or The Health Spectrum, LLC from January 1, 2018 through the present date; and
> - Any and all Documents relating you to having been invited to attend classes, events or retreats at the [South Florida wellness resort] which

---

[9] E-mail, attached as Exhibit D (with settlement related discussions redacted).

[10] Ex. A, ¶ 6.

[11] *Id.*

[12] The recipients and name of the resort has been redacted from the letter.

were being put on by Klein and/or The Health Spectrum, LLC from
January 1, 2018 through the present date.

Of the nine client recipients of the letter, five had never actually been to the resort to visit

Plaintiffs.[13]  One of the client recipients had visited for private sessions with Plaintiffs, but had

never attended a retreat, event, or class there.[14]  The client recipients of the letters were largely

Plaintiffs' most significant clients and it seems that Defendants intentionally targeted them in

order to create as much damage as possible to Plaintiffs.[15]

Plaintiffs were very much alarmed when they learned that their clients had received the

communications.[16] As alleged in the Amended Complaint, Defendants had already unlawfully

accessed Plaintiffs' online accounts, which contained the confidential information of their

clients, violating their privacy, along with the privacy of Plaintiffs. Now their clients were being

directly contacted by Defendants' attorney, who was requesting that they not delete any

documents *whatsoever* relating to their relationship with Plaintiffs, dated January 1, 2018 to

present.

Plaintiffs were particularly concerned as Plaintiffs' clients have shared confidential and

sensitive information regarding their health, families, and businesses to Plaintiffs.  The letter

from Defendants' counsel certainly implied or suggested that any related documents and

information would be relevant to this case and subject to potential disclosure to Defendants.[17]

Since Defendants have serially schemed to abuse the court system, have previously cyberstalked

Plaintiff Klein through unauthorized access of his electronic accounts (as determined by Judge

Parnofiello) and have previously engaged in blackmail and extortion tactics using the court

---

[13] Ex. A, ¶ 8.
[14] *Id.* ¶ 9.
[15] *Id.* ¶ 10.
[16] *Id.* ¶ 12.
[17] Ex. E.

system and press, the last thing Plaintiffs wanted was Defendants asserting to non-parties, Plaintiffs' clients, whose files and communications Plaintiffs believe Defendant Oved had already accessed unlawfully,  that their sensitive information was subject to potential disclosure or discovery.

Additionally, as reflected in the attached affidavits executed by the clients, Plaintiffs' clients themselves are deeply concerned about Defendants' conduct.[18] The clients themselves have affirmed that they have no knowledge of Defendants' interference with Plaintiffs' relationship with the resort.[19] Given Defendants' past conduct, Defendants may seek to continue to harass and pester or even extort the clients by seeking to obtain irrelevant, private information from them and otherwise seeking to further entangle them in this case where they have absolutely no relevance.

As a result, Plaintiffs reluctantly filed a partial notice of voluntary dismissal of the claims premised on tortious interference with the South Florida wellness resort to avoid further entangling their clients in this case. In response, via e-mail, Defendants asserted that the notice of dismissal was invalid as it was partial and therefore asserted that "Ms. Oved has no choice but to continue to investigate **all** the claims brought by Mr. Klein in the Amended Complaint."[20] (emphasis in original).

Plaintiffs in turn have filed a notice of non-opposition to Defendants' motion to dismiss the tortious interference claim to the extent it is premised on interference with their relationship

---

[18] See Composite Exhibit F, affidavits signed by seven of Plaintiffs' clients contacted by Defendants. In order to protect the identities of their clients and the confidentiality of their relationships, and to minimize the risk of further abuse outlined here, Plaintiffs have redacted the names of the clients, with the exception of Mr. Adler. The initials of the clients have not been redacted. Plaintiffs would be willing to file unredacted versions if the Court allows the affidavits to be filed under seal.

[19] *Id.* (generally).

[20] E-mail attached as Exhibit G.

with the South Florida wellness resort. Defendants have still refused to refrain from further

contact with Plaintiffs' clients regarding this litigation and have refused to refrain from issuing

discovery on them.

## LEGAL STANDARD

Parties may move for protective orders pursuant to Fed. R. Civ. P. 26(c)(1) in order to

protect "a party or person from annoyance, embarrassment, oppression or undue burden or

expense." For good cause, a court may issue a protective order providing a variety of remedies,

such as precluding the discovery altogether. *O'Boyle v. Sweetapple*, 2016 U.S. Dist. LEXIS

16642, at *12 (S.D. Fla. Feb. 8, 2016). The party seeking a protective order "must demonstrate

good cause for the protection sought." *Wrangen v. Pennsylvania Lumbermans Mut. Ins. Co.*, 593

F. Supp. 2d 1273, 1277 (S.D. Fla. 2008) (citations omitted). "'Good cause' has been defined as a

'sound basis or legitimate need to take judicial action.'" *Id.* Good cause is the "sole criterion for

determining the validity of a protective order." *In re Alexander Grant & Co. Litig.*, 820 F.2d

352, 356 (11th Cir. 1987)

District courts evaluating the grounds for a protective order should "balance the interests

of those requesting the order." *McCarthy v. Barnett Bank of Polk City*, 876 F.2d 89, 91 (11th Cir.

1989). Once a party demonstrates good cause for the entry of a Rule 26(c) protective order, the

burden shifts to the party opposing the protection to explain why it is not warranted. *Am.*

*Standard Inc. v. Pfizer*, 828 F.2d 734, 741 (Fed. Cir. 1987).

Further, courts have the ability to issue protective orders under their own inherent

authority in addition to any basis provided under the Rules of Civil Procedure. The Supreme

Court in *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35, 104 S. Ct. 2199, 2209 (1984) noted the

court's inherent authority to enter a protective order regardless if specifically authorized by the

Rules, as it observed "we have no question as to the court's jurisdiction to [enter a protective order] under the inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." (internal citations and alterations omitted).

## **LEGAL ARGUMENT**

Defendants have previously threatened to subpoena all of Plaintiffs' clients. Now, having issued preservation letters, they presumably intend to serve discovery on various of Plaintiffs' clients, non-parties to this litigation, ostensibly because the clients may have documents relating to Plaintiffs' tortious interference claim involving the South Florida wellness resort.

Even if the interference claim was still at issue, the letters were harassing and inappropriate, as they sought that various non-parties, many of whom actually had no ties whatsoever with the resort, preserve various documents completely unrelated to this case. But as the claim has been mooted, whatever flimsy justification which existed for communicating with those clients, requesting that they retain certain documents, or seeking to serve discovery on them has been eliminated.

This Court should enter a protective order precluding Defendants from engaging in communications with Plaintiffs' existing or prospective clients regarding this litigation and further should preclude Defendants from serving discovery of any kind (such as subpoenas or deposition notices) on those existing or prospective clients. Given Defendants' prior extortive conduct and other misbehavior, Plaintiffs' business relationships has been put at risk and will continue to be put at serious risk if a protective order is not entered. Defendants has shown their malicious intent repeatedly. Plaintiffs and their clients should not be further subjected to Defendants further abusing the court system. Consequently, good cause exists for a protective order.

Courts have "broad discretion" to decide when a protective order is appropriate and what degree of protection is required. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). The Supreme Court in *Seattle Times* addressed the court's "broad discretion" to issue protective orders. The Court explained that "because of the liberality of pretrial discovery permitted by Rule 26(b)(1), it is necessary for the trial court to have the authority to issue protective orders conferred by Rule 26(c)." *Id.* The Court noted that discovery "has a significant potential for abuse," as discovery "implicate[s] privacy interests of litigants and third parties." *Id.*

Further, the Court explained that litigation creates the "opportunity, therefore, for litigants to obtain -- incidentally or purposefully -- information that not only is irrelevant but if publicly released could be damaging to reputation and privacy." *Id.* Consequently, the Court held that the "government clearly has a substantial interest in preventing this sort of abuse of its processes." *Id.*

While protective orders are typically issued to limit formal discovery, courts have also held that protective orders can be issued to preclude or eliminate informal discovery as well. Multiple courts, including this court, have entered protective orders precluding litigants from contacting customers of the opposing party, in order to prevent the harassment of the customers and to otherwise help preserve customer relationships.

In *May Coating Techs., Inc. v. Ill. Tool Works*, 157 F.R.D. 55, 56 (D. Minn. 1994), a patent infringement action, the defendant sought and obtained a protective order precluding the plaintiff from contacting, communicating, or corresponding with its actual and prospective customers, except through the defendant's attorneys. After suing the defendant, the plaintiff had issued a press release indicating that it had sued the defendant. It then wrote infringement notice

letters to the defendant's customers it believed either owned or were considering purchasing the defendant's products. It finally offered to release the customers from liability if they cooperated with plaintiff. The defendants contended that the plaintiff's conduct was harassing and stated that it would either offer the information sought by plaintiff or obtain it from its customers and provide it. The court granted the motion for a protective order, noting that "good cause" existed for it.

Similarly, in *Aktienge-Sellschaft v. Westburg*, 260 F. Supp. 636, 637 (E.D. Pa. 1966), a trademark infringement action, the court entered a protective order precluding the plaintiff, Volkwsagen, from contacting the customers or former customers of the defendant, a car dealership. The plaintiff had called customers, telling them about the lawsuit, and asking if they had purchased new or used cars from the dealership. The plaintiff then told some customers that the defendant was not an authorized Volkswagen dealership and that the dealership had sold used cars when customers had asked for new.

The plaintiff attempted to justify its conduct on the basis that it was merely conducting discovery to shed light on misrepresentations made by the defendant to its customers, to learn about whether the defendant's service department was inadequate, and to determine if there was customer confusion as to whether the defendant was an "authorized dealer."

The court rejected the plaintiff's justifications as "scarcely plausible." The court noted that some of the issues sought to be discovered were not disputed or really at issue. Further, the court explained that the facts sought to be discovered could be established without customer contact. The court pointed out that "the issue as to whether defendant has infringed plaintiff's trademarks is to be determined by the actions of the defendant - its advertising, signs, literature,

etc. - and there would seem to be no preliminary need to interview customers on these subjects."
*Id.*

To the extent that the plaintiff needed discovery, court stated it could do so through the defendant directly "without stirring up the customers." *Id.* The court held that the prejudice to the defendant was "obvious and irreparable" and granted the motion requiring the plaintiff to refrain from "initiating, directly or indirectly, any contact or communication with the customers or former customers of the defendant, touching upon the dealings between the defendant and its customers, or the subject matter of this litigation."

This court followed *May Coating* and *Westburg* in *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 05-60860-CIV, 2006 U.S. Dist. LEXIS 97573, at *7 (S.D. Fla. July 11, 2006). *Jeld-Wen* involved claims of defective glass windows that needed to be repaired. The court held that customers of one of the parties (Jeld-Wen) should not be contacted until all repairs had been completed. The court, citing *May Coating* and *Westburg*, explained that "[t]his restriction is meant to protect Jeld-Wen's customers from unnecessary contact and to preserve Jeld-Wen's relationship with its customers." *Id.*

This case involves more egregious facts than *May Coating* and *Westburg*. Defendants' bad faith and their efforts and long-standing threats to harm Plaintiffs and their reputations cannot be disputed. Further, even prior to Plaintiffs filing the notice of non-opposition, the clients contacted by Defendants had a highly attenuated relationship with the South Florida wellness resort. Some of them have never visited Plaintiffs there. Even if they had visited Plaintiffs there, the fact that they had visited them there, if it had any relevance at all, could be proven through Plaintiffs' records or the records of the resort itself, the identity of which Defendants know.

Further, there is no relevance between the clients' records and the resort tortious interference claim. There was no need for Defendants to request that non-parties preserve all records concerning their relationship with Plaintiffs, an unbelievably broad request, one completely untethered to the resort interference claim. This is particularly the case as five of the clients have never visited the wellness resort or ever had anything to do with it. In all events, and most significantly of all, none of the clients have knowledge of Defendants' acts of interference with Plaintiffs' relationship with the resort.

Further, Plaintiffs have sensitive and confidential relationships with their clients. Plaintiffs provide life and wellness coaching and business consulting services to their clients. Thus, Plaintiffs confer with their clients regarding confidential and private matters. It undoubtedly chills and harms Plaintiffs' client relationships for Plaintiffs' clients to receive correspondence from the attorney of the extorter of Plaintiffs requesting that they preserve all of their files relating to Plaintiffs. That is especially the case as Defendant Oved had previously engaged in cyberstalking by accessing without authorization Plaintiffs' files and Plaintiffs electronically store information about their clients.

Given that Plaintiffs have mooted the South Florida wellness resort claim, no justification exists for Defendants to continue to pester the clients of Plaintiffs regarding this litigation. While Defendants will surely justify their need to contact and serve discovery on Plaintiffs' clients based on the continued need to "investigate" claims of the Plaintiffs, this Court should recognize that claim as the pretext that it is. In short, Defendants are seeking to subvert the ordinarily liberal nature of discovery in order to abuse Plaintiffs and their clients – the very thing warned about by the Supreme Court in *Seattle Times*.

The pretextual nature of Defendants' conduct is apparent when considering how they responded to Plaintiffs' notice of filing a voluntary partial dismissal. Defendants observed that Rule 41 does not permit a partial dismissal. While that is apparently true, typically one would expect that a defendant would desire and accept the dismissal of a claim against them and would seek to confirm a partial dismissal through some other means if Rule 41 could not be invoked. Defendants did not do that here. Their response, instead, was the assertion that they would continue to "continue to investigate **all** the claims brought by Mr. Klein." (emphasis in original)

As this Court has been informed in other filings[21], Defendants continuously have schemed to harass and harm Plaintiffs by engaging in abusive litigation tactics across multiple courts. They accessed without authorization Plaintiffs' electronic accounts during prior litigation. [D.E. 25 at 5] They attempted to extort and blackmail Plaintiffs in state court litigation by threatening negative publicity if Plaintiffs did not accept the settlement offer.[22] When Plaintiffs did not comply, as threatened, the Defendants issued a press release publicizing their allegations and caused the dissemination of their allegations to Plaintiffs' clients.[23]

Defendant Oved, when defending a cyberstalking injunction claim in the domestic violence section of the court in Palm Beach County, sought to disparage Plaintiff Klein by accusing him of being a "con artist," by seeking to cross examine him regarding an alleged failure to pay rent to Oved when they cohabitated, and by repeatedly asking whether Klein had, at one point in his life, been an "exotic dancer." [24] Judge Parnofiello rightfully did not allow Oved to engage in such abusive questioning. [25]

---

[21] *E.g.* Plaintiff's Motion to Strike [D.E. 25]
[22] *See* Composite Exhibit B.
[23] Press release, attached as Exhibit H.
[24] Hearing Transcript, attached as Exhibit I at 32:7-37:5.
[25] *Id.*

In this case, Defendants have continued their misconduct, seeking to continue to disparage and harass Plaintiffs by injecting irrelevant issues in court filings. As detailed more fully in Plaintiffs' motion to strike, [D.E. 25] which has yet to be adjudicated, the Defendants have repeatedly made irrelevant statements in court filings in this case clearly intended to harass or disparaging Plaintiffs so that they can continue their scheme to attack the reputation of Plaintiffs by publishing disparaging, misleading, or irrelevant information in public records.

It is apparent that the crux of Defendants' litigation strategy across multiple cases is to continuously pester, extort, disparage, or harass Plaintiffs and their clients in lieu of litigating the claims on the facts. They cannot defend the claims on the facts. Indeed, Defendant Oved has already pled the Fifth Amendment as to much of her misconduct,[26] and another court has already adjudicated guilty of Oved of cyberstalking Klein through accessing his online accounts without authorization,[27] which is at issue here too. Further, Defendants cannot deny that they have engaged in blackmail tactics as a litigation strategy, as their threats to ruin Plaintiffs' reputations are in multiple writings and are undeniable.[28]

In short, given the history, court action is needed now to prevent Defendants from engaging in further abusive tactics. Accordingly, Plaintiffs request that the Court enter a protective order requiring that Defendants and their counsel refrain from contacting, communicating, or corresponding with their actual and prospective clients regarding this litigation, except through the Plaintiffs' attorneys. Plaintiffs further request that a protective order be entered precluding Defendants from issuing deposition notices or subpoenas on Plaintiffs' actual or prospective clients.

---

[26] Exhibit J, February 29, 2022 hearing transcript, at 8:6-7, 9:3-4, 21:13-19, 31:12-14, 35:24-26:2.
[27] Exhibit I, at 38:8-18; 56:5-6.
[28] Exhibit B (numerous references to Plaintiffs' reputation, or thinly veiled threats to attack Plaintiffs' reputation, all expressed in writing from Defendants' prior counsel).

Defendants will contend that since they haven't issued formal discovery yet, a protective order is not proper under Rule 26. However, Defendants have threatened in writing to subpoena "all" of Plaintiffs' clients, thus specifically threatening formal discovery. Further, Defendants clearly have an intent to engage in formal discovery - they have issued correspondence directed to at least nine different non-party individuals requesting that they retain certain documents. No basis would exist for the correspondence unless Defendants had an intent to subpoena such documents or compel the testimony of the recipients. If the Defendants had no actual intent to serve discovery on the recipients, then the correspondence requesting preservation was clearly intended for harassment purposes only.

Further, courts have routinely issued protective orders limiting or precluding informal discovery under Rule 26, as Rule 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *May Coating*, 157 F.R.D. at 57 (citing to Rule 26 and granting protective order disallowing communications directed from litigant to opposing party's customers).

Moreover, even if Rule 26 was technically inapplicable, the Supreme Court has itself noted that a court has the inherent authority to issue protective orders. The Supreme Court, quoting Judge Friendly, explained "whether or not [a rule] itself authorizes a particular protective order . . . we have no question as to the court's jurisdiction to do this under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35, 104 S. Ct. 2199, 2209 (1984) (quoting *International Products Corp. v. Koons*, 325 F.2d 403, 407-408 (CA2 1963)) (alterations and citations omitted). Defendants should not be allowed to evade the court's jurisdiction to prevent discovery abuses by conducting all of their discovery informally.

Defendants will surely attempt to claim their letters were legitimate efforts at informal discovery. Given their prior conduct and threats and the utter irrelevance of the clients to the now mooted tortious interference claim, it is apparent that their true intent was to hassle and annoy Plaintiffs' clients through the guise of conducting an "investigation." As Justice Kennedy wrote in discussing criminal extortion under color of law, the law is concerned with "motives and consequences, not formalities." *Evans v. U.S.*, 504 U.S. 255, 274 (1992) (Kennedy, J.) (concurring). The law should not be "frustrated by knowing winks and nods." *Id.* Defendants' "investigation" was no more legitimate than their settlement "negotiations" in which they explicitly and implicitly threatened to harm Plaintiffs' reputations.

Finally, because Plaintiffs have alleged in the Amended Complaint that Defendants have tortiously interfered with Plaintiffs' relationship with Michael Adler, Plaintiffs acknowledge that Mr. Adler has relevance to this case. However, in light of Defendants' prior misconduct and to prevent further discovery abuse, Plaintiffs request that Mr. Adler not be contacted except through Plaintiffs' counsel; that any discovery pertaining to Mr. Adler be served only on Plaintiffs; and that any deposition of Mr. Adler be limited to the limited question of whether Defendants engaged in the interference of his relationship with Plaintiffs as has been alleged in the Amended Complaint.

Plaintiffs further request that the Court enter an award of attorney's fees incurred herein pursuant to Rule 26 (c) (3). No basis exists for Defendants to maintain their position and fees are warranted. If the Court grants this motion pursuant to its inherent authority, fees can be granted pursuant to the court's inherent authority as well. The court has "the ability to assess attorneys' fees and costs against the client or his attorney, or both, when either has acted in bad faith,

17

vexatiously, wantonly, or for oppressive reasons.... [T]he key to unlocking a court's inherent power is a finding of bad faith." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).

Defendants' vexatious, wanton, oppressive and bad faith conduct could not be clearer. They have sought to harass Plaintiffs through multiple cases. Invoking this Court, they sent preservation letters to Plaintiffs' clients on flimsy and pretextual grounds – supposed relevance to the tortious interference claim – and they refused to refrain from further contact with them or from issuing discovery on them, even now that the resort tortious interference claim has been mooted.

## CONCLUSION

The Plaintiffs respectfully request that Court issue a protective order as requested herein or enter any other appropriate relief to protect Plaintiffs and their clients from further harassment through the discovery process.

## BASIS FOR EXPEDITED RESOLUTION AND EFFORTS TO RESOLVE THIS MATTER WITHOUT FILING A MOTION

Plaintiffs request that this motion be decided on an expedited basis, no later than August 17. Plaintiffs first learned of Defendants' conduct on July 28, when Plaintiffs' undersigned counsel was on vacation out of state. On July 29, Plaintiffs filed a partial voluntary dismissal and conferred with counsel for Defendants via telephone call and e-mail requesting that they refrain from issuing discovery on Plaintiffs' clients in an effort to avoid filing a motion. Defendants rejected the validity of the voluntary dismissal and indicated they would continue to "investigate." Plaintiffs filed their notice of limited non-opposition on August 4 and further met and conferred with Defendants' counsel via e-mail. By e-mail dated August 5, Defendants stated they would not consent to the relief requested. An expedited resolution is needed because Defendants' conduct is damaging to or has the potential to damage Plaintiffs' client relationships

18

and goodwill. As the court explained in *Westburg*, a party's abuse of informal discovery that is

directed at the opposing party's customers causes prejudice that is "obvious and irreparable."

*Westburg*, 260 F. Supp. at 637. This Court should act now to prevent further harm.

Dated: August 6, 2022

Respectfully submitted,

BARNETT, KIRKWOOD, KOCHE,
LONG & FOSTER


/s/ *Stephen J. Bagge*
Todd Foster
Florida Bar No. 325198
Primary Email: tfoster@barnettbolt.com
Stephen J. Bagge, Esq.
Florida Bar No. 97788
Primary Email: sbagge@barnettbolt.com
601 Bayshore Boulevard
Suite 700
Tampa, Florida 33606
Telephone: (813) 253-2020
Facsimile: (813) 251-6711
Secondary Emails:
 aott@barnettbolt.com
 litigation@barnettbolt.com
*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I filed the foregoing on this August 6, 2022 which will send a

notice of electronic filing to all counsel of record.

/s/ *Stephen J. Bagge*

19