**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

MATTHEW KLEIN, and THE
HEALTH SPECTRUM, LLC

Plaintiffs,                                                  Case No: 9:22-cv-80160-KAM

v.

DIAN OVED, and OVED MEDIA INTERNATIONAL
INC. d/b/a EMPOWER DIGITAL

Defendants.
_____/

**PLAINTIFFS' REPLY IN SUPPORT
OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs (collectively referred to as "Klein") reply to Defendants' (collectively "Oved") Response to Plaintiffs' Motion for Preliminary Injunction as follows:

In her untimely[1] response, Oved principally makes two arguments. First, she denies accessing Klein's online accounts and then suggests that she had the right of access or that she did not violate the law intentionally. The Court can disregard Oved's highly implausible denials because after the Motion was filed, the Honorable Barbara Areces found that Oved had repeatedly and intentionally accessed Klein's accounts and dismissed with prejudice Oved's state court claims against Klein as a sanction. Judge Areces's finding is binding on this Court under principles of collateral estoppel. In all events, the evidence is overwhelming that Oved accessed Klein's accounts without permission. Oved also contends that Klein has not established a substantial likelihood of success on the merits of the RICO claim because she is the sole owner and employee of her company, and therefore it cannot be a RICO "enterprise." In fact, a solely held corporation can be a RICO enterprise. Oved's other assertions are meritless and addressed below.

I.     **Factual Background**

Oved describes the subject iPad as "abandoned." She asserts that Klein did not ask for it back, that both parties used the iPad, and that Klein did not revoke consent for Oved to access Klein's accounts. [D.E. 75 at 1-2] She further states that both parties had passwords saved on the iPad and that both parties knew the passcode to unlock it. [*Id.*] She further claims that Klein did not ask for the iPad back until the parties began litigating. [*Id.*] Oved denies intentionally accessing Klein's accounts or obtaining information from any protected computer. [*Id.*]

Oved cannot claim that she had permission to access Klein's accounts or deny that her conduct was intentional. In state court, Klein contended that Oved had obtained unauthorized

---

[1] *See* Local Rule 7.1(c)(1) (requiring a memorandum in opposition to be filed 14 days after a motion is served).

access of his Evernote and Gmail accounts, and that Oved was viewing Klein's attorney-client communications sent on iMessage (the Apple text message app). [D.E. 72-1, pp. 2-9]. Judge Areces found for Klein and made the factual finding that Oved had wrongfully obtained Klein's confidential communications and information. *[Id.]* Judge Areces dismissed Oved's claims with prejudice as a sanction. [*Id.*]

The same conduct is at issue here and cannot be relitigated. "Under collateral estoppel, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." *Montana v. United States*, 440 U.S. 147, 153 (1979). Federal courts may apply collateral estoppel to issues decided by state courts. *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 467 n. 6 (1982). In considering whether a state court judgment collaterally estops a federal court, the federal court applies the state's law of preclusion. *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011). The elements of collateral estoppel are as follows: 1) the issue at stake must be identical to the one involved in the prior litigation, (2) the issue must have been actually litigated in the prior suit, (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action, and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *S.E.L. Maduro v. M/V Antonio De Gastaneta*, 833 F.2d 1477 (11th Cir.1987).

Each element is met. First, whether Oved obtained unauthorized access to Klein's accounts was litigated in the state court. Second, it was ***actually*** litigated as the state court order reflects, i.e. Klein's motion for sanctions was granted on its merits. Third, whether Oved obtained access was a critical and necessary part of the judgment – the Court entered the dismissal order because it found that Oved had obtained access. Finally, Oved had a full and fair

opportunity to litigate the issue. As the order reflects, Oved declined to testify or offer any evidence in her favor, although she could have. (D.E. 72-1, at ¶ 24). The motion was contested and subject to an evidentiary hearing. Additionally, although the sanctions order is under appeal, the pendency of an appeal does not limit its preclusive effect. *Pincus v. Law Offices of Erskine & Fleisher*, 617 F. Supp. 2d 1265, 1269 (S.D. Fla. 2009).

Oved contends that the issue litigated in Miami-Dade is a different issue pending before this Court and collateral estoppel doesn't apply. [Resp. at 6] However, the Miami-Dade court order makes it obvious that the same exact issues litigated there are being litigated here – whether Oved electronically obtained unauthorized access to Klein's information and communications is being litigated in both cases. Oved also notes that she has an appeal pending, but the pendency of the appeal is irrelevant. Notably, the Miami-Dade order was made under a "clear and convincing" evidentiary standard. [D.E. 22, at ¶ 22] That standard is a higher standard than the "more likely than not" standard governing the claims being litigated here.

Oved also references the decision made by Judge Parnofiello of Palm Beach County in which Klein obtained a cyberstalking injunction against Oved. [Resp. at 6] Contrary to Oved's assertion, Klein has not contended that the cyberstalking decision has preclusive effect, as the cyberstalking decision was subject to a lesser evidentiary standard. Nevertheless, Judge Parnofiello's decision is persuasive, as Judge Parnofiello decided the same issue being litigated here, i.e. whether Oved obtained unauthorized access to Klein's accounts.

Further, Oved's recitation of the facts fails to respond to many of the facts stated in Klein's motion. While Oved contends that the iPad was abandoned, she fails to address the affidavit of Klein's helper which explains how Oved retained possession of the iPad. Specifically, as explained in the Motion, the helper had attempted to gain possession of all of

Klein's items. [D.E. 65 at 3] The helper asked Oved if she had been given everything and Oved confirmed that she had done so twice. As explained by Klein, he was under the impression that his possessions (including the iPad) were then safely stored away. [*Id* at 4] Thus, although Oved claims that Klein did not seek the return of the iPad, it was because Klein's helper had been informed that everything had been turned over, and Klein was therefore under the false impression that the iPad was safely stored away. [*Id.* at 3, 4]

Oved also contends that she has no intention of contacting Klein, accessing his accounts, and she no longer has possession of the iPad. However, it is apparent that Oved had a vendetta and obsession with Klein – she was relentlessly extorting him and publicizing her claims against him. Her attorney even stated that the initial injunction against her did little "other than make her angry," [D.E. 65-1 at 36] hardly the attitude of someone who feels restrained.

Oved's assertions are red herrings. First, Oved could still obtain access to Klein's accounts using a computer or other device other than the iPad. As the IP logs attached to the Injunction Motion reflect, an Arizona IP address was accessing Klein's Gmail account through a Mac computer and an Arizona IP address was accessing Klein's Evernote through "Evernote Web." [*Id.* at 23, 25-26] Thus, although it apparent that Oved was using the iPad, it is also apparent that Oved was accessing Klein's accounts through multiple devices. Second, even if Oved never accesses Klein's accounts again, the Motion seeks a prohibition on Oved disseminating or using any information or documents she wrongfully obtained by obtaining unauthorized access to Klein's accounts. The risk that Oved may wrongfully use such information is apparent, given Oved's apparent vendetta against Klein and her extortion of Klein. Third and most importantly, Oved's claim to have no interest in contacting Klein or accessing his

Page **4** of **10**

accounts is irrelevant. A party cannot avoid the consequences of violating the law by vowing to never do it again.

## II. Klein Has Shown A Likelihood of Success on His Claims

Oved argues that the Klein has not shown a likelihood of success on his CFAA claims, first contending that the Miami-Dade order is not binding on this court, and second contending that the IP logs attached to the Injunction Motion are hearsay. Initially, Oved is wrong regarding the Miami-Dade order, as it has collateral estoppel effect on this Court. Second, even if the Court was not bound by the Miami-Dade order, there is overwhelming evidence Oved accessed to Klein's accounts without permission. Oved disregards and does not address the circumstantial evidence and evidence of guilt, such as that the iPad was active in Arizona until Klein informed his attorney that he thought Oved had access to his accounts (creating an inference that Oved saw the message), that the iPad was in active use at Oved's home address, the fact that Oved has repeatedly pled the Fifth Amendment when questioned regarding Klein's allegations, or that the IP login histories show repeated access of Klein's accounts from an Arizona IP address. Oved also disregards that Klein avers that he revoked permission for Oved to access his accounts, which is credible given the parties' history. Oved simply disregards most of the evidence described in the Injunction Motion.

Oved does not contest the accuracy of the IP login history, but contends that the IP login histories are inadmissible hearsay. To the contrary, a district court may rely on hearsay and affidavit materials in ruling on a motion for preliminary injunction. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995).

Finally, while Oved now seems to deny accessing Klein's online accounts, or at a minimum seems to contend that her violations of law were not intentional, the Court should

Page **5** of **10**

consider that Oved previously pled the Fifth Amendment regarding the allegations made against her when questioned in the cyberstalking case. She then refused to offer any testimony at all when this issue was litigated in Miami-Dade. She has effectively amended her testimony by now denying that the basic truth of the allegations made against her. To the extent credibility is at issue, Oved has none. That two courts have independently ruled against her is telling.

Oved made little effort to address the SCA claims, which are similar legally to the CFAA claims, simply reiterating her assertions that she did not access Klein's accounts. Oved cannot relitigate this issue, the evidence is overwhelming that Oved accessed Klein's accounts without authorization, and Oved has no credibility. Oved does not address the substance of the DTSA claims, addressing them collectively with the RICO claims for reasons which are not clear as the claims are distinct from one another. Klein's argument that he has a substantial likelihood of success on the merits on the DTSA claims is effectively conceded by Oved.

Oved's sole argument on the RICO claims is that her company cannot be a RICO enterprise because she is the sole employee and owner of the company. The argument is both legally and factually unsupported. It has long been established that a RICO enterprise can consist of a company and that a person associated with the company/enterprise is a distinct "person" who can be sued as a RICO defendant. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001). This precise issue was addressed by the Supreme Court in *King*. In *King*, boxing promoter Don King was alleged to have participated in an enterprise's affairs through racketeering activity. *Id.* at 160-61. The enterprise was alleged to be a corporation in which he was the president and sole shareholder. *Id.* The Supreme Court squarely held that an owner/employee of a company is distinct from the company itself and the owner/employee can be a RICO defendant involving a claim that the company was a RICO enterprise. *Id.* at 163. The

Court explained "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Id.* While the Court acknowledged the principle that an enterprise must be distinct from the person, it further noted the case before it "concerns a claim that a corporate employee is the 'person' and the corporation is the 'enterprise.'" *Id.* at 164. It held that a corporate employee can be a separate "person" from the company he or she works for, which can be an "enterprise." *Id.* at 166. (holding that the "RICO provision before us applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner….") While the *King* case construed the federal RICO Act, federal decisions interpreting the federal RICO Act are "afforded great weight" by courts construing the Florida RICO Act. *O'Malley v. St. Thomas Univ., Inc.*, 599 So.2d 999, 1000 (Fla. 3d DCA 1992).

What has been asserted here is <u>identical</u> to what was pled in *King* – that the enterprise was Empower and that Oved (the president and sole owner of Empower) is the sole RICO defendant who engaged in unlawful conduct through the enterprise. Thus, it is irrelevant that Oved supposedly is the sole owner and employee of her company.

While irrelevant, Oved's assertion that her company has no employees is either false or misleading. Oved's company LinkedIn page lists five "employees." Ex. A at 29. Indeed, four individuals other than Oved list themselves as having active employee/freelancer relationships with the company. (*Id* at 2, 9, 15, 23). Further, the company website describes the company as having a "team," (Ex. B ) and Oved herself stated on a video available online that she has a "team."[2]

While it is unclear if these employees have traditional employee relationships with the company or are more in the nature of independent contractors, it is apparent that the company is

---

[2] https://www.youtube.com/watch?v=6u57p1KIwUo, at the 3:53 mark in the video.

not being run as a wholly solo enterprise as insinuated by Oved. In all events, for purposes of RICO liability, which is significant is that the company has a separate legal existence from Oved, which has been asserted and has not been denied by Oved.

### III. Klein Has Demonstrated Irreparable Harm

Oved incorrectly states that Klein has failed to allege irreparable harm. Oved claims that Klein waited too long to file the injunction motion. Oved disregards that the injunction motion was filed at the onset of the case in February. [D.E. 7] The Court denied the motion without prejudice to renew because Oved had moved to dismiss the Complaint on the grounds of lack of personal jurisdiction. [D.E. 27] The instant motion was only filed after the Court authorized it by denying Oved's motion to dismiss. Simultaneously with this case, Klein was also sought an injunction in state court under state law to enjoin Oved from cyberstalking him by accessing his accounts. [D.E. 36-1] The state court entered a two-year cyberstalking injunction against Oved in June, affording Klein some protection from Oved while he was waiting for this Court to decide the motion to dismiss. [*Id.*]

By the time the Court had entered an order on the motion to dismiss, Klein's sanctions motion in the state case, which involved the same issues as here, become set for an evidentiary hearing on September 19. [D.E. 72-1 at 2]. In the interest of judicial economy and simplicity (the reasons the Court denied the injunction motion without prejudice), Klein opted to proceed to the sanctions hearing to obtain a factual finding on the issue of whether Oved had obtained unauthorized access to Klein's accounts as the state court's factual finding would be binding here. At it turned out, the state court did not enter an order until November 27. [*Id.* at 9] Given the uncertain status of the sanctions order, Klein ultimately filed the preliminary injunction motion on November 20, and then state court entered the sanctions order shortly later on.

Page **8** of **10**

Klein was not "sitting on his rights" and was acting with urgency. Klein was essentially prosecuting three simultaneous cases against Oved (two offensively, one defensively) to obtain the most protection possible. Klein filed for an injunction motion almost immediately in this case, which was denied without prejudice on judicial economy grounds. Simultaneously, in another forum, Klein sought and obtained an injunction on similar grounds, and in a third forum, Klein aggressively litigated the same factual issue as here, which ultimately resulted in the sanctions order that is factually binding on this court. Under the unique circumstances of this case, which involved simultaneous litigation involving similar issues across multiple forums, in which Klein already obtained a similar injunction on the same grounds as here, there is a reasonable and compelling explanation as to why Klein re-filed for an injunction in this forum when he did. *Cf. Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (denying injunction since there was no explanation for purported delay).

Oved does not address that her conduct is the kind that courts have routinely constitutes irreparable harm. Oved claims that the conduct was a long time ago and there is no threat it could continue. Oved does not necessarily need the iPad to hack into Klein's accounts, can still extort Klein, and there is a continued risk that Oved that could misuse the information or communications she saw even if she ceases hacking into Klein's accounts. An injunction is needed to prevent further harm. Finally, Oved does not address that under the Florida RICO Act, there is no need to even demonstrate irreparable harm to obtain an injunction.

### IV. **Oved Will Suffer No Harm From An Injunction**

Oved states that she will suffer from reputational, business, and financial harm from an injunction. Oved does not actually assert that an injunction will disrupt her ability to do business – indeed Oved insists that she has no interest in pursuing the activities that Klein seeks to enjoin.

Rather, her assertion is that an injunction will be bad for her reputation. Oved cites no authority that reputational harm is relevant. An injunction will always be harmful to the reputation of the defendant, so reputational impact should have no bearing. In all events, two courts have already found that Oved engaged in the misconduct detailed here. Oved should have complied with the law if she was concerned with protecting her reputation.

### V.   The Public Interest is Served By An Injunction

Asserting that there is no public interest in an injunction, Oved emphasizes that she will comply with the law going forward and that she is physically distant from Klein. However, the public interest is not served by allowing parties to violate the law with impunity. Oved could attempt to hack into Klein's accounts anywhere using any device, could try to extort him from anywhere, or otherwise continue her unlawful harassment schemes anywhere. Thus, her physical distance from Klein and her lack of possession of the iPad are of no relevance.

### VI.   A Minimal Bond Is Sufficient

Oved asserts that an injunction would harm her financially. However, she does not explain how, other than asserting that an injunction would harm her reputation. Given that Oved has strenuously asserted that she voluntarily would not engage in the activities that Klein seeks to enjoin, it is clear that an injunction will not negatively affect Oved. Further, Oved references the damages that Klein is seeking in this case (which consist of punitive damages, statutory damages, attorney's fees etc.). The damages that Klein is seeking has no relationship with the appropriate bond. A bond is entitled to compensate a defendant from the damages caused by an improvidently issued injunction and Oved has identified no such damages.

### VII.   Conclusion

Plaintiffs request this Court grant the Injunction Motion.

          CAREY, O'MALLEY, WHITAKER, MUELLER,
          ROBERTS & SMITH, P.A.

          */s/ Stephen J. Bagge*
          Stephen J. Bagge
          Florida Bar No. 97788
          E-mail: sbagge@careyomalley.com
          712 S. Oregon Avenue
          Tampa, FL 33606
          Telephone: 813-250-0577
          Facsimile: 813-250-9898
          *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2022, a copy of the foregoing was served via the Court's electronic notice on the following counsel of record:

Maura Krause, Esq.
Goldberg Segalla, LLP
500 S. Australian Ave., Suite 1000
West Palm Beach, FL 33401
mkrause@goldbergsegalla.com
pborges@goldbergsegalla.com

          */s/ Stephen J. Bagge*
          ATTORNEY